

FILED by _____ D.C.

SEP 1 6 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MAVERICK BOAT COMPANY, INC.,

     Plaintiff,

v.                                                                        02-14102-CIV-MIDDLEBROOKS/LYNCH

AMERICAN MARINE HOLDINGS, INC.,

     Defendant.

_____/

BLAZER BOATS, INC.

     Plaintiff,

                                     02-14283-CIV-MIDDLEBROOKS/LYNCH

v.

MAVERICK BOAT COMPANY, INC.,

     Defendant.

_____/

## ORDER ON MOTIONS FOR ATTORNEYS' FEES AND COSTS

THIS CAUSE comes before the Court upon Blazer Boat Inc.'s ("Blazer") Motion for

Attorney Fees and Costs (DE 97) and American Marine Holding, Inc.'s ("AMH") Motion for

attorney fees and costs (DE 98).  Maverick Boat Company, Inc. ("Maverick") responded to each

Motion separately.  Blazer and AMH then filed replies to Maverick's responses.  This Court

awarded Blazer and AMH fees pursuant to 17 U.S.C. §1323(d).  The Court has reviewed the

record in the above captioned actions and is fully informed.

## Reconsideration of the Court's Award

Maverick requests in its Responses that the Court reconsider its award. Maverick argues that it acted in good faith, particularly in light of the novel and complex nature of this litigation. Maverick asserts that this was the first civil litigation filed under the Vessel Hull Design Protection Act ("VHDPA"), 17 U.S.C. §1301 et seq. A motion to reconsider a judgment or order must indicate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp.2d 1366, 1369 (S.D. Fla. 2002); see also Wendy's Int'l, Inc., v. Nu-Cape Construction, Inc, 169 F.R.D. 680, 684 (M.D. Fla. 1996) (same). There are generally three grounds upon which reconsideration of an order is appropriate: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; and (3) the need to correct error or manifest injustice. Burger King Corp., 181 F. Supp.2d at 1369; see also Sussman v Salem, Saxon & Nielson, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994). As for the second ground, if the evidence was available at the time that the decision was being challenged, counsel must make a showing that it "made a diligent yet unsuccessful effort to discover the evidence." Chery v. Bowman, 901 F.2d 1053, 1058, n.6 (11th Cir. 1990). Wright and Miller warn that a motion for reconsideration should not be liberally granted:

> [R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly [footnote omitted]...[it] may not be used to relitigate old matters, [footnote omitted] or to raise arguments [footnote omitted] or present evidence [footnote omitted] that could have been raised prior to the entry of judgment.

11 Federal Practice and Procedure, *2810.1, pp. 124-128 (West 1995). In sum, the granting of a

motion for reconsideration is viewed with disfavor and rarely granted.

**REASONABLE FEES**

The starting point in any "reasonable fee" determination is the number of hours

reasonably expended on the litigation multiplied by the reasonable hourly rate. Hensley v.

Eckerhart, 461 U.S. 424 (1983). The resulting figure is known as the "lodestar." Id. The

lodestar may thereafter be enhanced or reduced based on the results obtained or the risk of non-

payment. Pennsylvania v. Delaware Valley Citizens Council II, ("Delaware II") 483 U.S. 711,

745 (1987); Pennsylvania v. Delaware Valley Citizens Council I, ("Delaware I") 478 U.S. 546

(1986). Where the objective sought was in fact obtained, the full lodestar amount should be

awarded. Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). "If the

result was excellent, then the court should compensate for all hours reasonably expended." Id. at

1302 (citing Popham v. Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987)).

In considering whether to adjust the lodestar amount upward or downward, a court may

wish to consider any of the twelve factors enumerated in Johnson v. Georgia Highway Express,

Inc., 488 F.2d 714 (5th Cir. 1974);[1] Hensley, 461 U.S. at 436. However, enhancement of the

lodestar should only be made in exceptional cases where need and justification for such

enhancement are readily apparent and supported by clear evidence of record. Delaware II, 483

---

[1] The 12 factors enumerated in Johnson are as follows: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson, 488 F.2d at 717-19.

U.S. at 728.  See also Norman, 836 F.2d at 1302.  The Supreme Court has rejected enhancements

for calculated lodestar amounts in cases which involve federal fee-shifting statutes such as the

one involved herein.  See City of Burlington v. Dague, 505 U.S. 557 (1992).  A downward

adjustment of the lodestar may be required when the party being awarded fees achieved only

limited success or spent time on unsuccessful and unrelated claims.  Hensley, 461 U.S. at 436.  A

further downward adjustment may be required for "excessive, redundant, or otherwise

unnecessary" hours.  Id. at 434.

### I. Reasonable Hourly Rate

In determining the reasonable hourly rate for the purpose of an attorneys' fees motion, the

burden is on the moving party to establish the prevailing market rate, which is the rate charged in

the community by lawyers of reasonably comparable skill, experience and reputation for similar

services.  Blum v. Stenson, 465 U.S. 886, 895-96, n. 11 (1984); NAACP v. City of Evergreen,

812 F.2d 1332, 1338 (11th Cir. 1987); Gaines v. Dougherty County Bd. Of Education, 775 F.2d

1565, 1571 (11th Cir. 1985).  "The decision regarding the appropriate hourly rate may be made

either by analyzing the affidavits submitted by counsel or, if this documentation is insufficient,

by relying upon the court's expertise."  Norman, 836 F.2d at 1303; Avirgan v. Hull, 705 F. Supp.

1544, 1549 (S.D. Fla. 1989).

Satisfactory evidence of the market rate, however, requires more than the mere affidavit

of the attorneys performing the work.  Blum, 465 U.S. at 896.  Also insufficient is testimony that

a given fee is reasonable; evidence must be of rates actually billed and paid.  Hensley, 461 U.S.

at 439 n. 15.  Such evidence may be adduced from charges of lawyers under similar

circumstances or by opinion evidence.  Norman, 836 F.2d at 1299.  When analyzing the market

rates being attested to, the Court may consider any of the twelve <u>Johnson</u> factors referred to previously. <u>Delaware I</u>, 478 U.S. at 564-69. One of those factors, the hourly rate normally charged by the applicant's counsel, has been deemed the logical starting place in any rate determination. <u>Vaughns v. Bd. Of Education</u>, 598 F.Supp. 1262 (D.Md. 1984), *aff'd* 770 F.2d 1245 (4th Cir. 1985); <u>Zeffiro v. First Pennsylvania Bank</u>, *N.A.*, 574 F.Supp. 443, 447 (E.D.Pa. 1983), *aff'd without opinion*. 746 F.2d 1469 (3d Cir. 1984). <u>See also</u> <u>Florida Pawnbrokers v. Fort Lauderdale</u>, 711 F.Supp. 1084, 1086-87 (S.D. Fla. 1989). Also considered probative are the rates that are billed in similar lawsuits and the relative skill of the attorneys involved. <u>Norman</u>, 836 F.2d at 1299.

## II. Reasonable Hours Expended

After determining the reasonable hourly rate for the services of Plaintiff's counsel, a Court turns to the second half of the lodestar equation and the reasonable number of hours expended on the litigation. The Supreme Court requires fee applicants to exercise "billing judgment." <u>Hensley</u>, 461 U.S. at 434. To reflect proper billing judgment, attorneys "must exclude from their fee applications excessive, redundant or otherwise unnecessary [hours] ... which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." <u>Barnes</u>, 168 F.3d at 428 (quoting <u>Norman</u>, 836 F.2d at 1301) (internal citations and quotation marks omitted). The fee applicant bears the burden of adequately documenting the appropriate number of hours. <u>Norman</u>, 836 F.2d at 1303. Such documentation consists of detailed records of the attorneys' time, stating with particularity the time spent on different claims and tasks. <u>See</u> <u>Hensley</u>, 461 U.S. at 437 (noting that "the general subject matter of time expenditures should be set out with sufficient

particularity that the district court can assess time claimed for each activity"). "Because reducing

the hours claimed requires the court's precision, the law in this circuit commands that both the

proof of the hours spent in litigation and any corresponding objections posed be voiced with a

similar exactitude." Duckworth, 97 F.3d at 1397 (citing Norman, 836 F.2d at 1301).


## REASONABLE COSTS

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, a court may award costs to

the prevailing party in a matter unless costs are specifically provided for otherwise by federal rule

or statute.  There are no specific provisions discussing or restricting an award for costs under 17

U.S.C. § 1323 which is the statutory authority for this case.  Seeing no prohibition or restriction,

an award of costs is permissible under Rule 54(d)(1).

When considering an award of costs, courts are strictly limited by the provisions of 28

U.S.C. § 1821 (dealing with compensation of witnesses) and 28 U.S.C. § 1920 (dealing with

permissible taxable costs).  In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987),

the Supreme Court determined that the power to tax costs granted by Rule 54(d)(1) is limited to

only those specific costs enumerated under 28 U.S.C. § 1821 and § 1920. Id. at 441-42.  This was

applied by the Eleventh Circuit in Parkes v. Hall, 906 F.2d 658, 659 (11th Cir. 1990) and again

later in Arcadian Fertilizer, L.P. v. MPW Indus. Servs., 249 F.3d 1293, 1296 (11th Cir. 2001).

The limitation on a district court's discretion is stated clearly and directly in these binding cases.

Accordingly, in the case at bar, Blazer and AMH are only entitled to have costs enumerated by §

1821 and § 1920 taxed against Maverick.

## BLAZER'S REQUEST FOR FEES AND COSTS

### A.  Blazer's Attorney Fees

Blazer submits that he worked on this matter for 916.80 hours and has 21.3 hours of non-attorney time.  Blazer seeks attorney's fees for these hours in the amount of $160, 732.88.  Maverick opposes Blazer's Motion on various grounds.  Maverick argues that time entries should be excluded for: (1) time spent on unspecified subject matters, (2) time spent on Blazer's unsuccessful claims, (3) time spent on mundane or clerical tasks, (4) time reflecting excessive fees, and (5) time spent on subject matters that combine both successful and unsuccessful claims.

The Court begins by determining what the reasonable hourly rate for Blazer's Motion.  Blazer's attorney seeks $175.00 per hour for his attorney fee and $13.75 for non-attorney fees.  This request is supported by the affidavit of Michael Guttmann who asserts that the rate charged is both standard and reasonable.  Blazer Motion for Attorney Fees at 35-36.  Maverick does not dispute the hourly rate requested by Blazer.  The Court finds the hourly rates requested by Blazer are reasonable.

The Court then considers each of Mavericks specific objections to the hours of attorney time claimed by Blazer.  First, Maverick argues that many of Blazer's time entries are inappropriately vague with regard to the subject matter of the work.  Response to Blazer, App. A.  Having reviewed these entries, the Court finds that many of the entries objected to by Maverick are, in fact, sufficient to identify the basic case/subject matter of the time entries based on the attorneys, witnesses, and companies involved in the case.  There are, however, some entries that are so vague as to prevent the Court from ascertaining, even remotely, the nature of the work

performed therein.  For example, Blazer claims 28.1 hours for work that is simply labeled "Research" between 5/16/03 and 10/5/03 and also claims 11.2 hours for enigmatic "reviewing" between 5/21/03 and 7/23/03.  Response to Blazer, App. A at 6.  Lacking any guidance to make a determination, including no specific clarifications in Blazer's Reply memorandum, the Court holds that these entries are vague to a fault and cannot be charged against Maverick.  The Court has also noted certain other exceedingly vague entries such as "Tele Mike" and "Tele w/ client" that do not even provide sufficient specificity to determine whether it regards the same case or matter. Response to Blazer, App. A at 1-5.  As such, these entries will also not be charged against Maverick.  In total, the unduly vague time entries add up to 58.9 hours which will be subtracted from the requested amount.

Maverick next objects to time entries by Blazer that are for "unsuccessful claims." Response to Blazer, App. B.  Maverick's explanation of why some of these entries can be proven to be related solely to unsuccessful claims is not entirely clear.  Upon review, however, the Court does hold that 6.9 hours of research time was spent solely on trade infringement, defamation, and Lanham Act research.  Response to Blazer, App. B at 1.  These hours will not be charged to Maverick, nor will the 26.1 hours claimed for Blazer's defense of its non-meritorious claims that were defeated by Maverick's summary judgment motion.  Response to Blazer, App. B at 3.

Another objection to Blazer's fee claims raised by Maverick is that certain hours were charged at attorney rates that were merely for mundane, clerical tasks.  Response to Blazer, App. C.  The Court is in agreement that these hours (with the exception of 3.5 hours discussing attorney plans for the case) were for tasks such as copying and scheduling that did not require attorney expertise.  Accordingly, 9 hours will be subtracted from the attorney billed hours and

will be, instead, added to the non-attorney hours bring the total of non-attorney billed hours to 30.3 hours at the rate of $13.75 per hour.

Maverick also makes the subjective argument that many of the times billed by Blazer (specifically, numerous travel times) were excessive and unreasonable. Response to Blazer, App. D. Upon review of the time entries, the Court finds most of the stated times are, in fact, reasonable. There are a few exceptions, however, such as 14 hours of travel from Aransas Pass on 9/20/02, 6.4 hours of travel from Pensacola on 6/25/03, 5.0 hours of travel from West Palm on 6/26/03, and 2.4 hours of travel from West Palm on 6/27/03. These times seem unreasonably large in the Court's opinion and have been adjusted accordingly to reflect a decrease of 10.3 unreasonable hours (decreased by 4 hrs., 3.4 hrs., 2 hrs., and .9 hrs. respectively).

Finally, Maverick raises the argument that many of the time entries submitted by Blazer combine work done on successful and unsuccessful claims. Response to Blazer, App. E. Reviewing the time entries by Blazer, the Court agrees that many of the entries do indicate that work on both successful and unsuccessful claims was performed. Unfortunately, the Court has no way to determine with any degree of specificity what time was spent on what issues based on the entries or on the virtually non-existent clarification in Blazer's Reply memorandum. As a result, the Court has reviewed the docket entries and finds that approximately 20% of the combined pleadings, motions, arguments, and submissions were directed toward the "unsuccessful claims" that Maverick highlights. Since, as discussed above, the burden for clarity of time entry is on the charging attorney, the Court will give Maverick the benefit of the argument on the unclear time entries combining different matters and arguments. Accordingly, the Court will discount the 235.0 contested "combination hours" by 20% for work done on the

"unsuccessful claims" alluded to in Maverick's Response.  Response to Blazer, App. E at 1-4.

This yields a further discount of 47.0 hours from the requested amount by Blazer.

Taking into account the subtractions and concessions discussed in these paragraphs, the

Court finds that Blazer may be compensated for 768.90 attorney hours at a rate of $175 per hour

(yielding $134,557.50) and 30.30 non-attorney hours at a rate of $13.75 per hour (yielding

$416.63).  Added together, this Court awards Blazer $134,974.13 in attorney's fees.

### B. Blazer's Costs

Blazer seeks costs in the amount of $53, 092.97.  Maverick asserts that Blazer seeks costs

which are not statutorily compensable under 28 U.S.C. § 1821 or § 1920, or which lack sufficient

description for the Court to determine whether or not they meet statutory requirements.

Particularly, Maverick asserts that Blazer seeks reimbursement for travel, lodging, and meal

expenses incurred while attorneys attended meetings, depositions, mediation, and trial.  Response

to Blazer at 11; See App. F, sec. A for list.  Maverick also asserts that Blazer seeks witness fees,

both attendance and subsistence, which exceed that authorized by 28 U.S.C. §1821.  Response at

11-12; See App. F, sec. B for list.  Blazer also seeks $10, 847.73 in expert fees which are not

recoverable.

Upon review of the costs Blazer requests, the Court agrees with many of the points and

objections raised by Maverick in its Response.  A large number of the cost entries relate to

expenses incurred by attorneys for food or travel that are not compensable.  Though the rules do

not speak directly to the issue, it is no stretch of the imagination to suppose that Congress

intended for some attorney costs to come out of the regularly charged attorney per-hour rates.  To

do otherwise would render an award of attorney's fees pure profit; a seeming windfall for the prevailing attorneys but far from a just result. Accordingly, the Court has deducted sums from Blazer's Affidavit of Costs relating to attorney personal expenses, as objected to by Maverick.

With regard to witness and expert compensation, while Maverick is correct in arguing that expert fees are not subject to increased witness per diem limits, the arguments put forward by Maverick with regard to witness per diem limits during the trial time seem to be unreasonably simplistic. Response at 9-11; Blazer Motion, Affidavit of Costs at 6-7. While there is a per diem limit of $144 for witness lodging and meals and, while the numerical amounts listed by Blazer ostensibly seem to exceed those limits, it only takes a brief examination of the receipts submitted by Blazer to see that the amounts listed are *collective* charges of the total time spent at the hotel by each witness and of *collective* meals with more than one witness. By comparing the room charges and dates on the charge receipts, the Court has determined that only minor adjustments are necessary to correct for spending beyond the per diem limits. For example, the amounts listed for Lonnie on page 7 of the Affidavit are excessive in light of the number of days that the witness stayed at the hotel and ate during the trial. As such, the Court has reduced the amount accordingly.

Following this line of thinking, the Court determines that, in light of the specific objections raised by Maverick in its Response to Blazer, the Total Cost due Arnold and Wilkins, P.A. is $5,719.99 and the Total Cost due Blazer is $10,048.39. Added together, this Court awards Blazer $16,268.38 in requested taxable costs.

## AMH'S REQUEST FOR FEES AND COSTS

### A. AMH's Attorney Fees

AMH seeks $535, 272.95 in attorneys' fees which is comprised of work done by Nelson

Hesse ($233,920.45) and McDermott, Will & Emery ($301,352.50).  Once again, Maverick

argues that time entries should be excluded for: (1) time spent on unspecified subject matters, (2)

time spent on Blazer's unsuccessful claims, and (3) time spent on subject matters that combine

both successful and unsuccessful claims.

As in its Response to Blazer's motion, Maverick focuses its Response to AMH's motion

primarily on the amount of time spent on different tasks, and does not object to the various

hourly rates stated in the Affidavits of Robert Zelnick and Frederick Elbrecht.  Response to

AMH.  Accordingly, the Court will recognize the hourly rates stated in those Affidavits.

With regard to the time claimed by Nelson Hesse and McDermott, Maverick first argues

that many of the time entries are inappropriately vague or redacted with regard to the subject

matter of the work.  Response to AMH, App. A.  Having reviewed these entries in light of

AMH's Reply memorandum which provides much of the previously redacted information, the

Court finds that many of the entries objected to by Maverick are, in fact, sufficient to identify the

basic case/subject matter of the time entries based on the attorneys, witnesses, and companies

involved in the case.  Some entries do remain so vague as to prevent the Court from adequately

determining the nature of the work performed.  For example, several AMH entries deal with a

general review of treatises (4/14/03) or "drafts of sample general objections" (8/28/02).

Response to AMH, App. A at 5-6; AMH Reply, Exhibit A at 2-3.  To the Court, generic

descriptions of this sort do not rise to the level of specificity required to request attorney's fees.

AMH also claims fees for several time entries that do not reference a specific date.  Response to AMH, App. A at 8.  This Court believes that a date of some sort is needed to adequately document alleged hours of work performed.  The Court holds that the examples given and several other similar entries are vague to a fault and cannot be charged against Maverick.

Maverick next objects to time entries by AMH that are for "unsuccessful claims." Response to AMH, App. B.  Upon review and in light of the forthright concessions made by AMH in Exhibit E to the AMH Reply memorandum, the Court does hold that deductions must be made from the fees request of AMH for the time spent on these claims.  Though there appears to be some discrepancies between the time in Exhibit E to the AMH Reply and the objections made by Maverick in App. B of the Response to AMH, the Court has examined the entries and, where necessary, rectified those discrepancies as fairly as possible.

Finally, Maverick raises the argument that many of the time entries submitted by AMH combine work done on successful and unsuccessful claims and therefore contain both compensable and non-compensable time.  Response to AMH, App. C and App. D.  Reviewing the time entries by AMH in non-redacted form, the Court agrees that many of the entries do indicate that work on both compensable and non-compensable claims was performed.  Unfortunately, the Court has no clear way to determine with any degree of specificity what time was spent on what issues based on the entries.  As a result, the Court has reviewed the docket entries and, as was the case with Blazer, finds that approximately 20% of the combined pleadings, motions, arguments, and submissions in the case were directed toward the "unsuccessful claims" that Maverick highlights.  Since, as discussed above, the burden for clarity of time entry is on the charging attorney, the Court will give Maverick the benefit of the

argument on the unclear time entries combining different matters and arguments. Accordingly, the Court will discount the subdivided hours of McDermott and of Nelson Hesse that Maverick objects to in App. C and App. D by 20% for work done on non-compensable matters alluded to in Maverick's Response to AMH.

Taking into account the various findings and deductions discussed above, the Court finds that AMH is entitled to a total award of $425,998.01 in attorney's fees. This amount is comprised of $193,320.62 from Nelson Hesse and $232,677.39 from McDermott.

**B. AMH's Costs**

AMH seeks costs in the amount of $48,205.74. This amount is comprised of a claim by Nelson Hesse for $39,338.74 and a claim by McDermott of $8,867.00. Maverick asserts that AMH seeks costs which are not statutorily compensable under 28 U.S.C. § 1821 or § 1920, or which lack sufficient description for the Court to determine whether or not they meet statutory requirements. Particularly, Maverick asserts that AMH seeks reimbursement for express mail, telecommunications, facsimile services, computer-assisted research, and attorney travel and personal expenses. Response to AMH at 14; Response to AMH, App. E and App. F. Maverick also asserts that AMH seeks witness fees, both attendance and subsistence, which exceed the amounts authorized by 28 U.S.C. §1821. Response to AMH at 14-16. AMH also seeks $17,185.56 in expert fees which are not recoverable.

Upon review of the costs AMH requests, the Court agrees with many of the points and objections raised by Maverick in its Response to AMH. There are many entries for non-compensable courier or copy/fax services and some entries do relate to expenses incurred by

attorneys for food or travel which are also non-compensable.  As stated previously, the Court

recognizes that some attorney costs are to come out of the regularly charged attorney per-hour

rates.  Accordingly, the Court has deducted from AMH's costs request, sums relating to

objectionable administrative expenses (such as facsimile and FedEx charges) and sums relating

to attorney personal expenses, as objected to by Maverick.

With regard to witness and expert compensation, Maverick is correct in arguing that

expert fees are not subject to increased witness per diem limits.  The expert will be compensated

as any witness and is also subject to the same per diem limits as any other witness.  As such, the

Court has reduced the requested amount accordingly.

Following this line of thinking, the Court determines that, in light of the specific

objections raised by Maverick in its Response to AMH, the Total Cost due Nelson Hesse is

$16,798.36 and the Total Cost due McDermott is $1,411.44.  Added together, this Court awards

AMH an overall total of $18,209.80 in requested taxable costs.


Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. With regard to **Case No. 02-14283**, the Motion by Blazer Boats for Attorney Fees **[DE**

**# 97-1]**, Motion by Blazer Boats for Costs **[DE # 97-2]**, and Motion by American Marine

Holdings for Attorney Fees and Costs **[DE # 98-1]** are **GRANTED IN PART** and **DENIED IN**

**PART**, insofar as Maverick will pay Blazer attorney's fees in the amount of $134,974.13 and

taxable costs in the amount of $16,268.38 (Arnold and Wilkins to receive $5,719.99 and Blazer

to receive $10,048.39).

2. With regard to **Case No. 02-14102**, the Motion by Blazer Boats for Attorney Fees **[DE # 133-1]**, Motion by Blazer Boats for Costs **[DE # 133-2]**, and Motion by American Marine Holdings for Attorney Fees and Costs **[DE # 134-1]** are **GRANTED IN PART** and **DENIED IN PART**, insofar as Maverick will pay AMH attorney's fees in the amount of $425,998.01 (Nelson Hesse to receive $193,320.62 and McDermott to receive $232,677.39) and taxable costs in the amount of $18,209.80 (Nelson Hesse to receive $16,798.36 and McDermott to receive $1,411.44).

DONE AND ORDERED in Chambers, at West Palm Beach, Florida, this _16_ day of September, 2004.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to Counsel of Record